## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

CLINTON SPROLES,

    Petitioner,

v.

JIM SALMONSEN, MONTANA
STATE PRISON WARDEN;
ATTORNEY GENERAL OF THE
STATE OF MONTANA,

    Respondents.

**Cause No. CV 22-18-BU-BMM**

**ORDER**

Petitioner Clinton Sproles ("Sproles") filed his initial petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in March of 2022. The Court directed Sproles to file an amended petition using the Court's standard form after determining that Sproles petition failed to identify a cognizable claim for federal habeas relief. (Doc. 2.) Sproles subsequently filed his Amended Petition, accompanied by 260 pages of exhibits. (Doc); (Doc.7-1.)

The Montana state district court and the Montana Supreme Court declined to address Sproles's claim that the Montana state district trial court erroneously sentenced him as a persistent felony offender (PFO) based upon an untimely notice. These courts determined that Montana state statute procedurally barred the claim. Sproles now attempts to raise the same claim before this Court under the guise of an

1

ineffective assistance of counsel claim (IAC). He argues his appellate counsel performed deficiently by failing to raise the PFO notice challenge on direct appeal. It appears that the claim is now procedurally defaulted because, as just explained, the Montana state courts determined that Montana law barred this claim. When a state court's rejection of a federal claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment," a habeas petitioner has procedurally defaulted his claim. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)

"A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn v. Martinez Ramirez*, 596 U.S. __, 142 S.Ct. 1718, 1727 (2022). Federal courts will not hear defaulted claims unless the petitioner can demonstrate cause for his noncompliance and actual prejudice or establish that a miscarriage of justice would result from the lack of review. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *see also McKinney v. Ryan*, 730 F. 3d 903, 913 (9th Cir. 2013). This Court may bypass a procedural default, however, in the interest of judicial economy when the claim clearly fails on the merits. *See Flournoy v. Small*, 681 F. 3d 1000, 1004 n. 1 (9th Cir. 2012); *see also Franklin v. Johnson*, 290 F. 3d 1223, 1232 (9th Cir. 2001); *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

At this juncture, it is more efficient to proceed to the merits of Sproles's IAC

claim. This Court reviews the claim *de novo* because Sproles's claim was not

adjudicated on the merits in state court. *See Runningeagle v. Ryan*, 825 F. 3d 970,

978 (9th Cir. 2016); *see also Cone v. Bell*, 556 U.S. 449, 472 (2009). The Court

determines that the claim lacks merit. The Court will deny Sproles's claim.

## I.    Background

The Court presumes the following facts correct, as summarized by the

Montana Supreme Court, absent clear and convincing evidence to the contrary. See

28 U.S.C. § 2254(e)(1).

> Following his arrest in Silver Bow County on February 25, 2017, the State charged Sproles with felony DUI by Information filed March 16, 2017. At the time, Sproles had twenty prior DUI convictions from 1980 through 2008. Upon his district court arraignment on April 6, 2017, he pled guilty as charged. Later that day, the State filed a notice of intent to seek treatment of him as a "persistent felony offender" (PFO), as defined and provided by §§ 46-1-202(18)(a), (b)(ii) and previously by § 46-18-501, MCA (2015), based on his July 2016 release from prison on parole on his last felony DUI conviction in 2008.
>
> Prior to sentencing, Sproles filed a motion to strike the State's PFO notice as untimely under § 46-13-108(1), MCA (requiring notice of intent to seek PFO treatment "at or before the [pretrial] omnibus hearing" provided by § 46-13-110, MCA). The motion further asserted that the recent ameliorative revision of the PFO scheme by the 2017 Legislature should retroactively apply, rather than the 2015 PFO statutes in effect at the time of his commission of the offense and subsequent guilty plea. In response to Sproles' informal *pro se* request to the court following a hearing on his motion to strike the PFO notice, the District Court conducted another hearing, this time affording him

the opportunity to withdraw his guilty plea. However, at the hearing, he twice unequivocally stated that, after consulting with his counsel, he no longer desired to withdraw his plea. After the District Court later issued a written order denying his motion to strike the PFO notice, sentencing proceeded, and the Court sentenced Sproles as a PFO to a 25-year prison term in accordance with the 2015 PFO statutes. Sproles subsequently appealed based on the sole assertion that he was erroneously sentenced as a PFO under the 2015 PFO statutes, rather than the 2017 PFO statutes. *See State v. Sproles* (*Sproles I*), 2019 MT 197N, ¶¶ 5-7, 397 Mont. 553, 455 P.3d 444. We affirmed, however, holding that he was correctly sentenced as a PFO under the 2015 PFO statutes. *Sproles I*, ¶¶ 5-7 (citing *State v. Thomas*, 2019 MT 155, ¶¶ 9-10, 396 Mont. 284, 445 P.3d 777).

In October 2019, Sproles filed a district court petition for postconviction relief from his 2017 conviction pursuant to Title 46, chapter 21, MCA. The petition asserted four separate claims for relief: (1) "actual innocence"; (2) that the district court erroneously sentenced him as a PFO based on a procedurally untimely PFO notice; (3) ineffective assistance of trial and appellate counsel; and (4) "insufficiency of the evidence" on the elements of the convicted offense. However, the District Court summarily denied the petition pursuant to § 46-21-201(1)(a), MCA (implicitly authorizing summary dismissal if the petition, case files, and case records "conclusively show that the petitioner is not entitled to relief"). The court specifically denied the PFO claim based on the procedural bar of § 46-21-105(2), MCA. Sproles timely appealed *pro se* on the sole asserted ground that the District Court erroneously denied his PFO claim that he was illegally or otherwise erroneously sentenced as a PFO on his 2017 conviction based on a procedurally untimely PFO notice in violation of § 46-13-108(1), MCA (requiring notice of intent to seek PFO treatment "at or before the [pretrial] omnibus hearing" provided by § 46-13-110, MCA).

4

Under Montana law, postconviction relief is an available remedy for "[a] person adjud[icated] guilty of an offense in a court of record" based on a "violation of the constitution or the laws of this state or the constitution of the United States" and who "has no adequate remedy of appeal." Section 46-21-101(1), MCA. However, as pertinent here, assertions of error for which the petitioner was "afforded the opportunity for" "direct appeal" and which "were or could reasonably have been raised on direct appeal may not be raised, considered, or decided" on petition for postconviction relief. Section 46-21-105(2), MCA. A district court may summarily deny and dismiss a PCR petition without response or hearing if the petition and case "files and records" "conclusively show that the petitioner is not entitled to relief." *See* § 46-21-201(1)(a), MCA; *Herman v. State*, 2006 MT 7, ¶ 15, 330 Mont. 267, 127 P.3d 422.

*Sproles v. State*, 2021 MT 170N, ⁋⁋ 3-6, 405 Mont. 535, 489 P.3d 906 (Table).

The Montana Supreme Court concluded that whether Sproles was illegally or erroneously sentenced as PFO for his 2017 felony DUI conviction based upon an untimely PFO notice presented a mixed question of law and fact and should have been raised on direct appeal. *Id.* at ⁋ 7. The Montana Supreme Court determined that the Montana state district court properly denied Sproles's claim for post-conviction relief pursuant to a state statutory procedural bar because Sproles did not raise the claim on direct appeal.

## II.    Sproles's Claim

Sproles asserts that his appellate counsel provided objectively unreasonable assistance by refusing to raise the untimely PFO notice claim on direct appeal and

instead chose to argue the weaker and meritless amelioration issue. Sproles claims a reasonable probability exists that he would have prevailed on appeal had his appellate counsel filed the PFO notice claim. Sproles contends he was prejudiced by his appellate counsel's performance and his claim was unjustly barred from further state collateral review. (Doc. 7 at 9-11.)

### III.    Analysis of IAC Claim

A claim for relief based on ineffective assistance of counsel requires establishing the following two elements: 1) counsel's performance was so seriously deficient that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment; and 2) counsel's deficient performance was prejudicial to the outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* standard applies ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Courts must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" when assessing the first prong of the *Stickland* standard. *Strickland*, 466 U.S. at 689. "Hindsight is discounted by pegging adequacy to 'counsel's perspective at that time' [that] investigative decisions are made and by giving a 'heavy measure of deference to counsel's judgment.'" *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (*quoting Strickland*, 466 U.S. at 691). "A convicted defendant making a claim of ineffective assistance must

identify the acts or omissions of counsel that are alleged to not have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The second prong of the *Stickland* standard requires demonstrating prejudice: errors by counsel, even if outside the range of reasonable professional assistance, do not warrant setting aside a judgment if the error would have no effect on the judgment. *Id*. at 691.

Effective legal assistance does not mean that appellate counsel must appeal every question of law or every nonfrivolous issue their client requests. *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983). "Nothing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Id.* at 754. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751–52. It remains possible, therefore, to bring a *Strickland* claim based on appellate counsel's failure to raise a particular claim, but it often proves difficult to demonstrate that counsel was incompetent. *Smith*, 528 U.S. at 288.

A petitioner can show deficient performance of appellate counsel only when counsel failed to raise a nonfrivolous issue that "was clearly stronger than [the] issues that counsel did present." *Id.* A petitioner must show that their appellate counsel failed to raise an issue obvious from the trial record that probably would

have resulted in reversal of the conviction. *Turner v. Duncan*, 158 F.3d 449, 459 (9th Cir. 1998), *as amended on denial of reh'g* (Nov. 24, 1998); *Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989). A petition cannot satisfy either prong of *Strickland*, the deficiency of appellate counsel's performance and any resulting prejudice, unless the petitioner can show that counsel's act or omission would probably have resulted in reversal. *Id.* at 1435.

Sproles's appellate counsel in the present case failed to raise the PFO notice claim. Counsel instead chose to focus on the claim that the updated 2017 version of the PFO statute, rather than the harsher 2015 version, should apply to Sproles. Sproles would not be considered a PFO under the 2017 statute, and he would have faced a significantly reduced potential maximum sentence for felony DUI.

Counsel explained in a January 23, 2019 letter to Sproles that he had researched the PFO notice issue and determined it was frivolous with no legal merit and no reasonable chance of winning. (Doc. 71 at 100). Counsel first outlined the pertinent law based upon his legal research. He noted that the PFO statute, Mont. Code Ann. § 46-13-108(5) stated "*Except for good cause shown*, if prosecution seeks treatment of the accused as a persistent felony offender, notice of that fact must be given at or before the omnibus hearing pursuant to 46-13-110." (*Id.*) (emphasis in original). Counsel described the purpose of the notice statute: "to give the defendant an opportunity to file an objection to the criminal record relied upon in the notice

8

and to hold a hearing should there be any such objection." (*Id*. at 101) (*citing State v. Potter*, 2008 MT 381, ⁋ 22, 332 Mont. 130, 136 P. 3d 507) (additional citations omitted). Counsel further explained that the Montana Supreme Court has held that, "if a defendant had ample opportunity to object to PFO treatment and challenge the underlying criminal record, and if the defendant was not prejudiced by the timing of the filing," it would not overturn a lower court's decision to impose a PFO sentence. (*Id*.) (citations omitted).

Counsel applied these principles to Sproles's case and observed that Sproles elected to enter a guilty plea to felony DUI at his arraignment. The prosecutor interjected during the plea colloquy and informed defense counsel and the state trial court that it was the State's intention to promptly file a notice of PFO. (*Id*.) The State filed a Notice of Intent to designate Sproles as a PFO later that same day. Sproles, through counsel, filed a motion to strike the PFO notice as untimely. The state trial court conducted a hearing on this issue and allowed Sproles the opportunity to withdraw his guilty plea due to the lack of advance PFO notice. Sproles elected not to withdraw his plea, and the state trial court subsequently sentenced him as a PFO. (*Id*.) Counsel's summary of Sproles's case noted that eight months elapsed between the filing of the PFO notice and Sproles's sentencing hearing.

Counsel explained to Sproles that, based on these facts, he believed the PFO issue lacked merit for the following three reasons. Counsel first believed the State

could show "good cause" for the late filing because the State was unaware that Sproles would be pleading guilty at his arraignment. The State informed the state trial court and the defense of its intent to file the notice and did so promptly following the arraignment. Thus, counsel believed the State satisfied the good cause exception contained in the statute. (*Id*. at 101-02.)

Counsel second focused the PFO notice statute's purpose. It provides defendants a chance to argue that they do not have the requisite criminal record to qualify for a PFO designation. (*Id*. at 102.) Counsel observed that Sproles had more than ample opportunity, approximately eight months, to mount such a challenge. Counsel provided Sproles with caselaw highlighting situations where the State failed to fully comply with the notice statute but such error proved harmless because the defendants had "ample time to object" to treatment as a PFO. (*Id*.) The defendants in the cases counsel summarized had between four and five months to file their objections. Counsel reasoned the Montana Supreme Court "would almost certainly hold" that the eight months Sproles had was an ample amount of time to lodge his objection to a PFO designation. (*Id*.)

Counsel finally explained that he did not believe he could argue in good faith that Sproles suffered prejudice by the timing of the filing of the notice. Sproles, at most, could argue that he pleaded guilty without knowing the potential maximum penalty he faced as a PFO. (*Id*.) But counsel noted that allowing a defendant to

withdraw the plea represents the solution to cure an invalid guilty plea. (*Id.* at 102-03.) The state trial court provided Sproles the opportunity to withdraw his plea, and Sproles declined so to do. Counsel did not believe he could find a valid basis to support an argument that Sproles was prejudiced. (*Id.* at 103.) Counsel believed that, based upon all these factors, ethics precluded him from raising the PFO issue on appeal. (*Id.*)

Counsel sent a follow-up letter to Sproles on January 28, 2019, again explaining his legal reasoning and conclusion that the PFO notice claim was not viable. (*Id.* at 106-07.) Counsel also explained that a case upon which Sproles relied, *State v. Madera*, 206 Mont. 140, 670 P. 2d 552 (1983), addressed an older version of the PFO notice statute and that more recent cases interpreting the updated version of the statute controlled. (*Id.* at 107.) Counsel also explained that he found no legal authority to support a position that a PFO notice filed hours after a guilty plea, but eight months prior to sentencing, deprived a trial court of the authority or jurisdiction to impose a PFO sentence. (*Id.*) It has become apparent from the correspondence between counsel and Sproles that counsel researched the PFO notice claim and exercised his reasonable professional judgment in determining that the claim lacked merit. He did not perform deficiently. *See Strickland*, 466 U.S. at 690.

Sproles contends that the PFO notice claim was "clearly stronger" than the challenge counsel raised, seeking to apply the ameliorative provisions of the 2017

amendment to the PFO statute to Sproles's case. (Doc. 7 at 10-11.) It appears counsel's belief about the PFO claim was well-founded. The post-conviction relief court noted that Sproles had actual knowledge that he qualified for PFO status by virtue of the fact that he had been sentenced as PFO in a 2008 Gallatin County criminal case. (Doc. 7-1 at 92.) The post-conviction relief court also observed that Sproles was not prejudiced by the late notice, "[r]ather the interests of justice would be compromised by evasion of the PFO by a purposefully unexpected guilty plea." (*Id.*) Sproles received notice of the PFO designation on the same day as his guilty plea, and, although he challenged the timing of the notice, at no point in the underlying case did Sproles challenge the validity of the PFO designation or the criminal record relied upon in the PFO notice.

The Montana Supreme Court has stated that, "[t]he purpose for providing [a PFO] notice is to give the defendant an opportunity to file an objection to the criminal record relied upon in the notice and to hold a hearing should there be any such objection." *State v. Shults*, 136 P.3d 507 (Mont. 2006) (citing *State v. McQuiston*, 922 P.2d 519, 526 (Mont. 1996)). "[I]f a defendant had ample opportunity to object to PFO treatment, including the underlying charge on which the statute is based, and that defendant was not prejudiced by the timing of the filing, we will not overturn a district court's decision to impose a sentence with a PFO designation." *Id.*; *see also State v. Dodson*, 221 P.3d 687 (Mont. 2009). Sproles had

eight months to challenge his criminal record and chose not to pursue a challenge. The only plausible inference remains that Sproles knew he qualified for treatment as a PFO under the applicable statute. It appears that counsel used reasonable professional judgment in winnowing out this weak, and arguably frivolous, argument in order to focus on the amelioration claim. *See Jones*, 463 U.S. at 751-52.

Sproles contends the argument that counsel did raise was "frivolous" in light of the Montana Legislature's plain language and clear intent regarding when the PFO statute was to apply and take effect. (*Id*. at 30.) This Court disagrees with Sproles assertion that the claim was frivolous. The claim represented a novel challenge to a newly enacted amendment to the PFO statute. The Montana Appellate Defender's Office mounted several concurrent challenges to the statue, arguing that its ameliorative provisions should retroactively apply to Sproles and others similarly situated. Four of the justices of the Montana Supreme Court, in the closely decided opinion of *State v. Thomas*, 2019 MT 155, 396 Mont. 284, 445 P. 3d 777, determined that the PFO definition in effect at the time of the commission of the crime remained applicable to the defendant, even though that defendant's sentencing had occurred on the effective date of the statute that changed the definition of a PFO. The three dissenting justices would have granted the defendant the benefit of the ameliorative sentencing statute enacted by the Legislature during the pendency of his case. *Id*.

13

The *Thomas* decision unfortunately precluded Sproles from obtaining relief; that does not mean, however, that the argument advanced was frivolous. It also does not mean that counsel performed deficiently by failing to raise a nonfrivolous issue that "was clearly stronger than [the] issues that counsel did present." *See Smith*, 528 U.S. at 288. The PFO notice issue was not "clearly stronger."

There is no indication that, had counsel raised the claim, Sproles's conviction and sentence would have been reversed. Counsel did not perform ineffectively by failing to raise the PFO notice claim, and Sproles cannot show that prejudice ensued. *See Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) The Court will deny Sproles's petition for these reasons.

### IV.    Certificate of Appealability

"The district court must issue o[r] deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A certificate of appealability should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Gonzales v. Thaler*, 565 U.S. 134, 140 (2012)(*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

"[A] claim can be debatable even though every jurist of reason might agree, after a [certificate of appealability] has been granted and the case has received full consideration, that the petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). The outcome of Sproles's IAC claim could be reasonably debatable; a COA will issue.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Sproles's Amended Petition (Doc. 7) is DENIED.

2.  The Clerk of Court is directed to enter judgment, by separate document, in favor of Respondents and against Petitioner.

3.  A Certificate of Appealability is GRANTED.

DATED this 11th day of April, 2023.

Brian Morris, Chief District Judge
United States District Court